IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIFEPORT SCIENCES LLC, and<br>LIFESCREEN SCIENCES LLC<br><br>Plaintiffs,<br><br>v. | : | Civ. A. No.________________ |
| COOK INCORPORATED and<br>COOK MEDICAL INCORPORATED,<br><br>Defendants. | : | Jury Trial Demanded |

**COMPLAINT**

1. Plaintiffs LifePort Sciences LLC ("LifePort") and LifeScreen Sciences LLC ("LifeScreen")(collectively, "Plaintiffs"), for their Complaint against Defendants Cook Incorporated ("Cook Inc.") and Cook Medical Incorporated, ("Cook Medical") (collectively, "Cook" or the "Defendants") hereby alleges as follows:

**PARTIES**

2. Plaintiff LifePort is a Texas Limited Liability Company with its principal place of business at 6136 Frisco Square Blvd., Suite 385, Frisco, TX 75034.

3. Plaintiff LifeScreen is a Texas Limited Liability Company with its principal place of business at 6136 Frisco Square Blvd., Suite 385, Frisco, TX 75034.

4. Defendant Cook Inc., is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business located at 750 Daniels Way, Bloomington, IN 47402.

5. Defendant Cook Medical, is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business located at 1025 West Acuff

Road, Bloomington, IN 47403.

6. Defendants are in the business of developing, manufacturing, and selling medical devices. Such devices include, but are not limited to, endovascular stents, grafts, vena cava filters, and delivery systems.

## NATURE OF THE ACTION

7. This is a civil action for the infringement of United States Patent No. 5,562,728 (the "'728 Patent") (attached as Exhibit A) entitled "Endovascular Grafting Apparatus, System and Method and Devices for Use Therewith," United States Patent No. 5,489,295 (the "'295 Patent") (attached as Exhibit B) entitled "Endovascular Graft Having Bifurcation and Apparatus and Method for Deploying the Same," United States Patent No. 5,993,481 (the "'481 Patent") (attached as Exhibit C) entitled "Modular Bifurcated Intraluminal Grafts and Methods for Delivering and Assembling Same," United States Patent No. 5,676,696 (the "'696 Patent") (attached as Exhibit D) entitled "Modular Bifurcated Intraluminal Grafts and Methods for Delivering and Assembling Same," United States Patent No. 6,030,414 (the "'414 Patent") (attached as Exhibit E) entitled "Variable Stent and Method for Treatment of Arterial Disease," United States Patent No. 7,147,662 (the "'662 Patent") (attached as Exhibit F) entitled "Hook for Attaching to a Corporeal Lumen and Method of Manufacturing," and United States Patent No. 6,126,673 (the "'673 Patent") (attached as Exhibit G) entitled "Vena Cava Filter" (collectively, the "Patents-in-Suit") under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

8. Plaintiff LifePort is the lawful assignee of all right, title and interest in and to the '728,'295,'481, '696, '414, and '662 Patents.

9. Plaintiff LifeScreen is the lawful assignee of all right, title and interest in and to the '673 Patent.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271, *et seq.*

11. Upon information and belief, the Defendants are subject to personal jurisdiction by this Court. The Defendants have committed such purposeful acts and/or transactions in the State of Delaware that they reasonably knew and/or expected that they could be haled into a Delaware court as a future consequence of such activity.

12. Venue in this district is proper under 28 U.S.C. §§ 1400(b) and 1391(b) and (c), because the Defendants are subject to personal jurisdiction in this district and have committed acts of infringement in this district. The Defendants make, use, and/or sell infringing products within the District of Delaware, have a continuing presence within the District of Delaware, and have the requisite minimum contacts with the District of Delaware such that this venue is a fair and reasonable one. Upon information and belief, the Defendants have transacted and, at the time of the filing of this Complaint, are continuing to transact business within the District of Delaware.

## COUNT I

**(Cook's Infringement of the '728 Patent)**

13. Paragraphs 1 through 12 are incorporated by reference as if fully restated herein.

14. Plaintiff LifePort is the assignee and lawful owner of all right, title and interest in and to the '728 Patent.

15. The Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, or which employ

systems, components and/or processes that make use of systems or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, one or more of the claims of the ’728 Patent. Such devices are medical devices, including but not limited to endovascular grafts and delivery systems, such as, but not limited to Cook’s Zenith® endovascular graft products, various accessories for Cook’s Zenith® endovascular graft products, and other similar devices, including but not limited to Cook’s Zenith Flex®, Cook’s Zenith LP®, Cook’s Zenith Fenestrated®, and Cook’s Zenith Renu®.

16. The Defendants actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, infringement of the ’728 Patent by making, using, offering for sale, importing, and selling infringing medical devices, as well as by contracting with others to use, market, sell, offer to sell, and import infringing medical devices, all with knowledge of the ’728 Patent and its claims; with knowledge that their customers and end users will use, market, sell, offer to sell, and import infringing medical devices; and with the knowledge and the specific intent to encourage and facilitate those infringing sales and uses of infringing medical devices through the creation and dissemination of promotional and marketing materials, instructional materials, product manuals, and technical materials.

17. The Defendants have also contributed to the infringement by others, including the end users of infringing medical devices, and continue to contribute to infringement by others, by selling, offering to sell, and importing the infringing medical devices into the United States, knowing that those products constitute a material part of the inventions of the ’728 Patent, knowing those products to be especially made or adapted to infringe the ’728 Patent, and knowing that those products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

18. The Defendants have had knowledge of and notice of the ’728 Patent and their

infringement since at least, and through, the filing and service of the Complaint. Moreover, by way of prosecution of patent applications assigned to one or more of the Defendants, the Defendants had notice of the ’728 Patent prior to the filing of the Complaint. Despite this knowledge and notice, the Defendants continue to commit tortious conduct by way of patent infringement. Accordingly, the Defendants have willfully infringed the ’728 Patent.

19. The Defendants have been and continue to be infringing one or more of the claims of the ’728 Patent through the aforesaid acts.

20. Plaintiff LifePort is entitled to recover damages adequate to compensate for the infringement, including enhanced damages for the Defendants’ willful infringement.

## COUNT II

### (Cook’s Infringement of the ’295 Patent)

21. Paragraphs 1 through 20 are incorporated by reference as if fully restated herein.

22. Plaintiff LifePort is the assignee and lawful owner of all right, title and interest in and to the ’295 Patent.

23. The Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, or which employ systems, components and/or processes that make use of systems or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, one or more of the claims of the ’295 Patent. Such devices are medical devices, including but not limited to endovascular grafts and delivery systems, such as, but not limited to Cook’s Zenith® endovascular graft products, various accessories for Cook’s Zenith® endovascular graft products, and other similar devices, including but not limited to Cook’s Zenith Flex®, Cook’s Zenith LP®, and Cook’s Zenith Fenestrated®.

24. The Defendants actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, infringement of the ’295 Patent by making, using, offering for sale, importing, and selling infringing medical devices, as well as by contracting with others to use, market, sell, offer to sell, and import infringing medical devices, all with knowledge of the ’295 Patent and its claims; with knowledge that their customers and end users will use, market, sell, offer to sell, and import infringing medical devices; and with the knowledge and the specific intent to encourage and facilitate those infringing sales and uses of infringing medical devices through the creation and dissemination of promotional and marketing materials, instructional materials, product manuals, and technical materials.

25. The Defendants have also contributed to the infringement by others, including the end users of infringing medical devices, and continue to contribute to infringement by others, by selling, offering to sell, and importing the infringing medical devices into the United States, knowing that those products constitute a material part of the inventions of the ’295 Patent, knowing those products to be especially made or adapted to infringe the ’295 Patent, and knowing that those products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

26. The Defendants have had knowledge of and notice of the ’295 Patent and their infringement since at least, and through, the filing and service of the Complaint. Moreover, by way of prosecution of patent applications assigned to one or more of the Defendants, the Defendants had notice of the ’295 Patent prior to the filing of the Complaint. Despite this knowledge and notice, the Defendants continue to commit tortious conduct by way of patent infringement. Accordingly, the Defendants have willfully infringed the ’295 Patent.

27. The Defendants have been and continue to be infringing one or more of the claims of the ’295 Patent through the aforesaid acts.

28. Plaintiff LifePort is entitled to recover damages adequate to compensate for the infringement, including enhanced damages for the Defendants' willful infringement.

**COUNT III**

**(Cook's Infringement of the '481 Patent)**

29. Paragraphs 1 through 28 are incorporated by reference as if fully restated herein.

30. Plaintiff LifePort is the assignee and lawful owner of all right, title and interest in and to the '481 Patent.

31. The Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, or which employ systems, components and/or processes that make use of systems or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, one or more of the claims of the '481 Patent. Such devices are medical devices, including but not limited to endovascular grafts and delivery systems, such as, but not limited to Cook's Zenith® endovascular graft products, various accessories for Cook's Zenith® endovascular graft products, and other similar devices, including but not limited to Cook's Zenith Flex®, Cook's Zenith LP®, Cook's Zenith Fenestrated®, and Cook's Zenith Renu®..

32. The Defendants actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, infringement of the '481 Patent by making, using, offering for sale, importing, and selling infringing medical devices, as well as by contracting with others to use, market, sell, offer to sell, and import infringing medical devices, all with knowledge of the '481 Patent and its claims; with knowledge that their customers and end users will use, market, sell, offer to sell, and import infringing medical devices; and with the knowledge and the specific intent to encourage and facilitate those

infringing sales and uses of infringing medical devices through the creation and dissemination of promotional and marketing materials, instructional materials, product manuals, and technical materials.

33. The Defendants have also contributed to the infringement by others, including the end users of infringing medical devices, and continue to contribute to infringement by others, by selling, offering to sell, and importing the infringing medical devices into the United States, knowing that those products constitute a material part of the inventions of the ’481 Patent, knowing those products to be especially made or adapted to infringe the ’481 Patent, and knowing that those products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

34. The Defendants have had knowledge of and notice of the ’481 Patent and their infringement since at least, and through, the filing and service of the Complaint. Moreover, by way of prosecution of patent applications assigned to one or more of the Defendants, the Defendants had notice of the ’481 Patent prior to the filing of the Complaint. Despite this knowledge and notice, the Defendants continue to commit tortious conduct by way of patent infringement. Accordingly, the Defendants have willfully infringed the ’481 Patent.

35. The Defendants have been and continue to be infringing one or more of the claims of the ’481 Patent through the aforesaid acts.

36. Plaintiff LifePort is entitled to recover damages adequate to compensate for the infringement, including enhanced damages for the Defendants’ willful infringement.

## COUNT IV

### (Cook’s Infringement of the ’696 Patent)

37. Paragraphs 1 through 36 are incorporated by reference as if fully restated herein.

38. Plaintiff LifePort is the assignee and lawful owner of all right, title and interest

in and to the ’696 Patent.

39. The Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, or which employ systems, components and/or processes that make use of systems or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, one or more of the claims of the ’696 Patent. Such devices are medical devices, including but not limited to endovascular grafts and delivery systems, such as, but not limited to Cook’s Zenith® endovascular graft products, various accessories for Cook’s Zenith® endovascular graft products, and other similar devices, including but not limited to Cook’s Zenith Flex®, Cook’s Zenith LP®, and Cook’s Zenith Fenestrated®.

40. The Defendants actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, infringement of the ’696 Patent by making, using, offering for sale, importing, and selling infringing medical devices, as well as by contracting with others to use, market, sell, offer to sell, and import infringing medical devices, all with knowledge of the ’696 Patent and its claims; with knowledge that their customers and end users will use, market, sell, offer to sell, and import infringing medical devices; and with the knowledge and the specific intent to encourage and facilitate those infringing sales and uses of infringing medical devices through the creation and dissemination of promotional and marketing materials, instructional materials, product manuals, and technical materials.

41. The Defendants have also contributed to the infringement by others, including the end users of infringing medical devices, and continue to contribute to infringement by others, by selling, offering to sell, and importing the infringing medical devices into the United States, knowing that those products constitute a material part of the inventions of

the ’696 Patent, knowing those products to be especially made or adapted to infringe the ’696 Patent, and knowing that those products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

42. The Defendants have had knowledge of and notice of the ’696 Patent and their infringement since at least, and through, the filing and service of the Complaint. Moreover, by way of prosecution of patent applications assigned to one or more of the Defendants, the Defendants had notice of the ’696 Patent prior to the filing of the Complaint. Despite this knowledge and notice, the Defendants continue to commit tortious conduct by way of patent infringement. Accordingly, the Defendants have willfully infringed the ’696 Patent.

43. The Defendants have been and continue to be infringing one or more of the claims of the ’696 Patent through the aforesaid acts.

44. Plaintiff LifePort is entitled to recover damages adequate to compensate for the infringement, including enhanced damages for the Defendants’ willful infringement.

## COUNT V

### (Cook’s Infringement of the ’414 Patent)

45. Paragraphs 1 through 44 are incorporated by reference as if fully restated herein.

46. Plaintiff LifePort is the assignee and lawful owner of all right, title and interest in and to the ’414 Patent.

47. The Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, or which employ systems, components and/or processes that make use of systems or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, one or more of the claims of the ’414 Patent. Such devices are medical devices, including but not limited to

endovascular grafts and delivery systems, such as, but not limited to Cook's Zenith® endovascular graft products, various accessories for Cook's Zenith® endovascular graft products, and other similar devices, including but not limited to Cook's Zenith Fenestrated®.

48. The Defendants actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, infringement of the '414 Patent by making, using, offering for sale, importing, and selling infringing medical devices, as well as by contracting with others to use, market, sell, offer to sell, and import infringing medical devices, all with knowledge of the '414 Patent and its claims; with knowledge that their customers and end users will use, market, sell, offer to sell, and import infringing medical devices; and with the knowledge and the specific intent to encourage and facilitate those infringing sales and uses of infringing medical devices through the creation and dissemination of promotional and marketing materials, instructional materials, product manuals, and technical materials.

49. The Defendants have also contributed to the infringement by others, including the end users of infringing medical devices, and continue to contribute to infringement by others, by selling, offering to sell, and importing the infringing medical devices into the United States, knowing that those products constitute a material part of the inventions of the '414 Patent, knowing those products to be especially made or adapted to infringe the '414 Patent, and knowing that those products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

50. The Defendants have had knowledge of and notice of the '414 Patent and their infringement since at least, and through, the filing and service of the Complaint. Moreover, by way of prosecution of patent applications assigned to one or more of the Defendants, the Defendants had notice of the '414 Patent prior to the filing of the Complaint. Despite this knowledge and notice, the Defendants continue to commit tortious conduct by way of patent

infringement. Accordingly, the Defendants have willfully infringed the ’414 Patent.

51. The Defendants have been and continue to be infringing one or more of the claims of the ’414 Patent through the aforesaid acts.

52. Plaintiff LifePort is entitled to recover damages adequate to compensate for the infringement, including enhanced damages for the Defendants’ willful infringement.

## COUNT VI

### (Cook’s Infringement of the ’662 Patent)

53. Paragraphs 1 through 52 are incorporated by reference as if fully restated herein.

54. Plaintiff LifePort is the assignee and lawful owner of all right, title and interest in and to the ’662 Patent.

55. The Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, or which employ systems, components and/or processes that make use of systems or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, one or more of the claims of the ’662 Patent. Such devices are medical devices, including but not limited to endovascular grafts and delivery systems, such as, but not limited to Cook’s Zenith® endovascular graft products, various accessories for Cook’s Zenith® endovascular graft products, and other similar devices, including but not limited to Cook’s Zenith LP®.

56. The Defendants actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, infringement of the ’662 Patent by making, using, offering for sale, importing, and selling infringing medical devices, as well as by contracting with others to use, market, sell, offer to sell, and import infringing medical devices, all with knowledge of the ’662 Patent and its claims; with knowledge that their

customers and end users will use, market, sell, offer to sell, and import infringing medical devices; and with the knowledge and the specific intent to encourage and facilitate those infringing sales and uses of infringing medical devices through the creation and dissemination of promotional and marketing materials, instructional materials, product manuals, and technical materials.

57. The Defendants have also contributed to the infringement by others, including the end users of infringing medical devices, and continue to contribute to infringement by others, by selling, offering to sell, and importing the infringing medical devices into the United States, knowing that those products constitute a material part of the inventions of the ’662 Patent, knowing those products to be especially made or adapted to infringe the ’662 Patent, and knowing that those products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

58. The Defendants have had knowledge of and notice of the ’662 Patent and their infringement since at least, and through, the filing and service of the Complaint. Despite this knowledge and notice, the Defendants continue to commit tortious conduct by way of patent infringement.

59. The Defendants have been and continue to be infringing one or more of the claims of the ’662 Patent through the aforesaid acts.

60. Plaintiff LifePort is entitled to recover damages adequate to compensate for the infringement.

**COUNT VII**

**(Cook’s Infringement of the ’673 Patent)**

61. Paragraphs 1 through 60 are incorporated by reference as if fully restated herein.

62. Plaintiff LifeScreen is the assignee and lawful owner of all right, title and

interest in and to the ’673 Patent.

63. The Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, or which employ systems, components and/or processes that make use of systems or processes that directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, one or more of the claims of the ’673 Patent. Such devices are medical devices, including but not limited to vena cava filters and delivery systems, such as, but not limited to Cook’s Celect® vena cava filter, various accessories for Cook’s Celect® vena cava filter, and other similar devices.

64. The Defendants actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, infringement of the ’673 Patent by making, using, offering for sale, importing, and selling infringing medical devices, as well as by contracting with others to use, market, sell, offer to sell, and import infringing medical devices, all with knowledge of the ’673 Patent and its claims; with knowledge that their customers and end users will use, market, sell, offer to sell, and import infringing medical devices; and with the knowledge and the specific intent to encourage and facilitate those infringing sales and uses of infringing medical devices through the creation and dissemination of promotional and marketing materials, instructional materials, product manuals, and technical materials.

65. The Defendants have also contributed to the infringement by others, including the end users of infringing medical devices, and continue to contribute to infringement by others, by selling, offering to sell, and importing the infringing medical devices into the United States, knowing that those products constitute a material part of the inventions of the ’673 Patent, knowing those products to be especially made or adapted to infringe the ’673 Patent, and knowing that those products are not staple articles or commodities of commerce

suitable for substantial non-infringing use.

66. The Defendants have had knowledge of and notice of the ’673 Patent and their infringement since at least, and through, the filing and service of the Complaint. Moreover, by way of prosecution of patent applications assigned to one or more of the Defendants, the Defendants had notice of the ’673 Patent prior to the filing of the Complaint. Despite this knowledge and notice, the Defendants continue to commit tortious conduct by way of patent infringement. Accordingly, the Defendants have willfully infringed the ’673 Patent.

67. The Defendants have been and continue to be infringing one or more of the claims of the ’673 Patent through the aforesaid acts.

68. Plaintiff LifeScreen is entitled to recover damages adequate to compensate for the infringement, including enhanced damages for the Defendants’ willful infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, respectfully request the following relief:

a) A judgment that U.S. Patent Nos. United States Patent Nos. 5,562,728; 5,489,295; 5,993,481; 5,676,696; 6,030,414; 7,147,662; and 6,126,673 are valid and enforceable.

b) A judgment that the Defendants have infringed the ’728 Patent;

c) A judgment that the Defendants have infringed the ’295 Patent;

d) A judgment that the Defendants have infringed the ’481 Patent;

e) A judgment that the Defendants have infringed the ’696 Patent;

f) A judgment that the Defendants have infringed the ’414 Patent;

g) A judgment that the Defendants have infringed the ’662 Patent;

h) A judgment that the Defendants have infringed the ’673 Patent;

i) A judgment that Plaintiffs be awarded all appropriate damages (including enhanced damages for willful infringement) under 35 U.S.C. § 284 for the Defendants’ past infringement, and any continuing or future infringement of the Patents-in-Suit, up

until the date such judgment is entered, including pre and post judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary, to adequately compensate Plaintiffs for Defendants' infringement, an accounting:

i. that this case be declared exceptional within the meaning of 35 U.S.C. § 285 and that Plaintiffs be awarded its reasonable attorneys' fees against the Defendants that they incur in prosecuting this action

ii. that Plaintiffs be awarded costs, and expenses that they incur in prosecuting this action; and

iii. that Plaintiffs be awarded such further relief at law or in equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

1. Plaintiffs hereby demand trial by jury on all claims and issues so triable.

DATED: January 23, 2013

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com

OF COUNSEL:
Martin J. Black -- LEAD ATTORNEY
Kevin M. Flannery
Joseph R. Heffern
DECHERT LLP
Cira Centre 2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000
martin.black@dechert.com
kevin.flannery@dechert.com
joseph.heffern@dechert.com

*Counsel for Plaintiffs*
*LifePort Sciences LLC and*
*LifeScreen Sciences LLC*